## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|   Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-05-289 |
| | § | C.A. No. C-07-431 |
| DERLY DE LA GARZA, | § | |
|   Defendant/Movant. | § | |

## MEMORANDUM OPINION AND ORDER DISMISSING
## MOTION  TO VACATE, SET ASIDE OR CORRECT SENTENCE,
## AND ORDER DENYING CERTIFICATE OF APPEALABILITY

Pending before the Court is Derly De La Garza's ("De La Garza") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (D.E. 38.)[1]  The Court ordered the government to respond (D.E. 39), and the government filed a response in which it argues that De La Garza should be denied relief.  (D.E. 40.)  To date, De La Garza has not filed a reply.

As discussed in detail herein, De La Garza lists three separate claims in his motion. For the reasons set forth below, the Court severs De La Garza's third claim and notes that it has been addressed as part of a separate motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2). (D.E. 41.)  His other two claims, which are properly brought in a motion pursuant to 28 U.S.C. § 2255, are addressed herein.  His first claim, which arguably falls outside the scope of his waiver of § 2255 rights, fails on its merits.  His second claim is subject to dismissal because he waived his right to file that claim.  Even if it were

---

[1] Dockets entries refer to the criminal case, C-05-cr-289.

properly before the Court, moreover, it fails on its merits.  For these reasons, discussed in more detail herein, the Court DENIES his § 2255 motion.  Additionally, the Court DENIES De La Garza a Certificate of Appealability.

## I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II.  FACTS AND PROCEEDINGS

**A.      Summary of the Offense[2]**

On August 1, 2004, an officer with the Corpus Christi, Texas police department observed De La Garza driving a vehicle on Virginia Street in Corpus Christi.  Based on a prior apprehension, the officer was aware that De La Garza did not have a driver's license. When the officer stopped the vehicle, De La Garza exited quickly and the officer patted him down for officer safety.  The officer asked him for identification and De La Garza stated that he did not have any.  The officer observed a Texas Identification card resting on the center console, and retrieved it thinking it belonged to the defendant.  As the officer reached into the vehicle, he observed in plain view a piece of crack cocaine sticking out of a piece of foil located on the driver's side arm rest.  Further investigation revealed five rocks of crack cocaine with a net weight of .87 grams.  De La Garza told the officer that he had

---

[2]  The offense conduct as set forth herein is derived from Paragraphs 4 through 8 of De La Garza's Presentence Investigation Report ("PSR").

borrowed the car from a friend and he claimed no responsibility for the crack cocaine. When the officer showed it to him, De La Garza stated that he did not know what it was.

On December 10, 2004, officers were on routine patrol when they noticed a vehicle stopped in the middle of the street in front of 2931 Ruth Street.  They observed De La Garza reaching into the passenger side of the vehicle and conducting a suspected drug transaction.  When De La Garza noticed the approaching police unit, he began to walk away.  He also failed to respond to the officers' verbal requests to stop.

The officers pursued De La Garza to the front door of 2931 Ruth Street, his residence, where he was apprehended.  During a search of De La Garza, a black film cannister containing 8.84 grams of crack cocaine was discovered in his front left pocket. Also found was $332 in assorted denominations of U.S. currency.  De La Garza's mother consented to a search of the residence.  A search revealed a black scale with white powder residue and $1,020 in De La Garza's bedroom.

On March 9, 2005, officers with the Corpus Christi Police Department executed a search warrant at 2931 Ruth Street after a confidential informant provided information that De La Garza was selling crack cocaine.  During the investigation, it was determined that De La Garza was known to carry a pistol on his person, that he was a confirmed Raza Unida prison gang member and that he possibly had a Pit Bull guarding his home.  For these reasons, a "no knock" warrant was obtained.  As the officers began to secure a perimeter

around the residence, they observed De La Garza running from the back of the house, and placing an object underneath a discarded refrigerator as he did so.

He was arrested as he began to climb a chain link fence in an effort to escape.  An officer proceeded to the refrigerator and located a pill bottle that contained a large quantity of rocks, later determined to be 40.68 grams of crack cocaine.  De La Garza stated that he did not know anything about the pill bottle, but informed where officers could find a small amount of marijuana in a sandwich bag in the kitchen. He explained to officers that he is a user of marijuana.  The officers searched the residence and found $4,302.00 in cash and 3.37 grams of marijuana.

The case was presented to the AUSA by FBI agents as part of an ongoing investigation of the Raza Unida Prison Gang in Corpus Christi.  The state case charging these facts was declined by state prosecutors due to the federal indictment in this case.

## B.    Criminal Proceedings

On May 11, 2005, De La Garza was charged in a single-count indictment with knowingly and intentionally possessing with intent to distribute approximately 8.84 grams of a mixture or substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (D.E. 1.)

On Monday, June 27, 2005, the case was called for rearraignment.  (D.E. 12; see generally D.E. 30, Transcript of Call for Rearraignment ("C. R. Tr.").  At this time, there was a discussion on the record regarding an oral agreement between defendant and the

4

United States, in addition to the written plea agreement filed with the Court.  As it was explained to the Court, the parties had agreed that the United States was not going to separately indict De La Garza for possession of the drugs seized on March 9, 2005, but that it intended to seek inclusion of that additional amount of crack as relevant conduct.  (C. R. Tr. at 11-12.)  As part of that discussion, AUSA Duke told the Court that the additional drugs were approximately 40.68 grams of cocaine base, but that the DPS lab had told Mr. Duke that the drugs also included a pharmaceutical additive that was not an illegal or controlled substance.  According to Mr. Duke, the DPS lab told him they would not analyze the substance to determine the percentage of the total amount that was the additive versus the percentage that was cocaine base.

After a lengthy discussion on the issue of DPS's refusal to break provide a lab report showing the breakdown between crack cocaine and the adulterant, the Court made clear that it was not going to accept any plea agreement that bound it one way or the other with respect to relevant conduct.  The Court stated as follows:

> THE COURT: ... I'm going to take the plea on what's in front of me.  I'm not going to give this guy a pass on 40 grams.  If you want to attempt to do relevant conduct, then it's going to have to meet the guideline approach to relevant conduct.
>
> MR. DUKE:   Yes, sir.
>
> THE COURT: And if the – if I say no and you attempt to prosecute this Defendant for relevant conduct, there's not going to be any bar on your prosecution of him from the terms of the Plea Agreement.  There may be some other procedural bar about which I'm not familiar or which Defense counsel could

bring to my attention, but insofar as the Plea Agreement is
concerned I'm not buying into that.

MR. DUKE: Yes, sir.

THE COURT: So whatever you all want to do.  If you want to
have a trial or go back to square one or whatever you want to
do, I'll do it.  But I'm not going to accept – I'm not going to
accept a Plea Agreement that deals with a dismissal of an
unindicted count or a bar to the prosecution of an unindicted
count.

(C. R. Tr. at 17-18.)

After defense counsel raised his belief that an agreement had been reached, the Court

reiterated:

THE COURT: I'm not going to accept that agreement.  I mean
I'm not going to accept that agreement in the fashion that says
– I mean I don't see how they could bring a prosecution if I
considered it as relevant conduct.  I don't see how they could
bring a prosecution based on a sentenced crime and I don't
really know, nobody's ever tried to do that.

MR. LIBBY: I don't think they would try.  As a practical matter
the sentence would be required to run concurrently so I don't
think it would be worth their time and effort.

But I think the deal is a reasonable deal, your Honor.  If
they can prove that it's relevant conduct, those are the same
issue that they'd have at trial –

THE COURT: Here's my problem.  I might not accept it as
relevant conduct if I don't know anything about these drugs.

MR. LIBBY: That's kind of what we're hoping, Judge.

THE COURT: Okay.  But later if they want to prosecute him,
he hasn't suffered any prejudice, my saying no I'm going to do
it.  I'm not going to – I don't know whether we're talking 40

6

> kilos – I mean 40 grams.  I just don't like it.  And I don't want
> to negotiate; I'm just telling you what I'm not going to do.

(C. R. Tr. at 18-19.)

The Court then ordered the parties to put any such agreement in writing and set the case for rearraignment at a future date.  (R. Tr. at 19-20.)

The case was called again on Friday, July 15, 2005, at which time De La Garza pleaded guilty to the indictment against him. (D.E. 13, 14.)  There was no discussion regarding any agreement as to relevant conduct or non-prosecution.  There also was no mention of the additional 40 grams of crack cocaine during this proceeding.  Moreover, the parties did not file a new plea agreement.  Instead, they referred to the one already on file with the Court (which did not include any such agreement.)

The filed plea agreement provided that, in exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government would recommend that he receive a three-level credit for acceptance of responsibility and to recommend a sentence at the lowest end of the applicable guideline range.  (D.E. 13 at ¶ 2.)  The plea agreement contained a voluntary waiver of De La Garza's right to appeal and to file a § 2255 motion:

> Defendant is aware that Title 18 USC § 3742 affords a defendant the right to appeal the sentence imposed.  The defendant waives the right to appeal the sentence imposed or the manner in which it was determined.  The defendant may appeal only (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines, which had not been requested by the United States, as set forth in 18 USC § 3742(b).  Additionally, the defendant is aware that Title 28, USC § 2255, affords the right to contest

7

> or "collaterally attack" a conviction or sentence after the
> conviction or sentence has become final.  The defendant waives
> the right to contest his/her conviction or sentence by means of
> any post-conviction proceeding.

(D.E. 13 at ¶ 7) (emphasis in original).  The agreement was signed by both De La Garza and

his counsel.  (D.E. 13 at 5.)

At this proceeding, the Court specifically questioned De La Garza under oath to

ensure that his plea was voluntary and knowing and to ensure that he understood and was

voluntarily relinquishing his appeal rights and, in particular, his right to file a § 2255 motion:

> THE COURT: As I look at this Agreement it tells me that you
> are also giving up your right to appeal the sentence that I
> impose and any sentencing decision that I make with respect to
> your case and you're giving up your right to collaterally attack
> any conviction or sentence after your conviction or sentence
> has become final.  In other words, your conviction will be final
> and your sentence will be final upon my pronouncement of it.
>
> Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Is that the way you want to handle your case?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you want to give up your right of appeal?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you want to give up your right to file any
> petition under Title 26 – excuse me – 28, United States Code,
> Section 2255?  Do you want to give up that right as well?
>
> THE DEFENDANT: Yes, sir.

(D.E. 29, Rearraignment Transcript ("R. Tr.") at 11-12.)  It is clear from the foregoing that De La Garza's waiver was knowing and voluntary.  See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

De La Garza also testified that no one had promised him what his sentence would be, that no one had threatened him or forced him to plead guilty, that no one had promised him leniency in exchange for his guilty plea, that it was his decision to plead guilty and that he was pleading guilty because he was guilty.  (R. Tr. at 9-10, 12.)

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR") and sentencing occurred on October 12, 2005. (D.E. 23).  Although Defendant did not file any objections to the PSR, counsel filed a sentencing memorandum with the Court and also reiterated a number of the arguments verbally therein at sentencing. (D.E. 19; D.E. 23; see also generally D.E. 28, Sentencing Transcript ("S. Tr.").)  In particular, counsel argued that the Court should take into account the U.S. Sentencing Commission's statements noting the disparity between sentencing ranges for powder cocaine and crack cocaine offenses, and should lower De La Garza's sentence accordingly. The Court declined to do so and indicated that it would impose a sentence within the applicable guideline range.

The Court also asked whether the Defense was contesting "the issue of the 40 grams." (S. Tr. at 9.)  Defense counsel never directly answered the question, but simply

explained what the factual circumstances were that led to the additional 40 grams being included.  No objection to the inclusion of the additional 40 grams was ever lodged, however.

The Court adopted the PSR as written and sentenced De La Garza to 151 months in the custody of the Bureau of Prisons, to be followed by a five-year supervised release term, and also imposed a $100 special assessment.  (D.E. 23, 24.)  Judgment of conviction and sentence was entered October 17, 2005. (D.E. 24.)

Despite his waiver of appellate rights, De La Garza appealed.  (D.E. 22.)  The Fifth Circuit affirmed in a per curiam opinion issued June 21, 2006. (D.E. 35.)  De La Garza filed a petition for writ of certiorari, which the Supreme Court denied on October 30, 2006. (D.E. 37.)  De La Garza's § 2255 motion was received by the Clerk on November 2, 2007, but indicates that it was executed and mailed on October 28, 2008.  (D.E. 38 at 7, 8.) Utilizing the earlier date, it is timely.

### III.  MOVANT'S ALLEGATIONS

In his motion, De La Garza raises three grounds for relief.  In the first, he contends that his guilty plea was invalid because his attorney mistakenly advised him that by pleading guilty he would be held accountable only for the 8.84 grams of cocaine base seized from him at the time of his December 10, 2004 arrest.  He was, in fact, sentenced based on not only the 8.84 grams of cocaine base, but also two additional amounts: (1) the 40.68 grams found underneath the refrigerator at the time that De La Garza fled his

residence on December 10, 2004; and (2) the .87 grams of crack found in the vehicle De La Garza was driving when stopped on August 1, 2004. (<u>See</u> PSR at ¶¶ 4, 7, 13.)  De La Garza claims that, had he known he would be held accountable for the additional 41.55 grams of cocaine base and faced a potential sentence of 151 to 188 months, he would have proceeded to trial instead of pleading guilty.  (D.E. 38 at 4.)

In his second ground for relief, he claims that his counsel was constitutionally ineffective because he failed to object at sentencing to the additional 40.68 grams of cocaine base being included as relevant conduct at sentencing.  According to De La Garza, the "substance could not be identified by the state lab as cocaine base or crack." (D.E. 38 at 4.)  Thus, had his counsel objected, he argues he would have likely received a lesser sentence.

In his third and final ground for relief, De La Garza asks to be resentenced based on Amendment 706 to the United States Sentencing Guidelines, which reduced the offense level for certain offenses involving crack cocaine.

As to De La Garza's third claim, the Court concludes that it has already been addressed by the Court.  Specifically, subsequent to De La Garza filing his § 2255 motion, his counsel in the underlying proceedings, Assistant Federal Public Defender Jason Libby, filed a motion for relief pursuant to 18 U.S.C. § 3582, precisely on this ground.  (<u>See</u> D.E.

41.)   The Court denied the motion by order dated July 21, 2008.  Accordingly, De La Garza's third claim for relief has already been addressed and denied by the Court.[3]

De La Garza's first two claims will be addressed herein as his stated grounds for relief under § 2255.  For the reasons set forth herein, these two claims fail.

## IV.  DISCUSSION

### A.     28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Vaughn,

---

[3]  The government's response to De La Garza's § 2255 motion concedes that his sentencing guideline range would be different under the Amendment 706 to the sentencing guidelines.  (See D.E. 40 at 15-19 (admitting that with the retroactive amendment, De La Garza's new guideline range would be 130 to 162 months, and the government would recommend the imposition of a 130-month sentence, but nonetheless arguing that the Court should "decline to exercise its jurisdiction to resentence him because the 151-month term of imprisonment is reasonable.").)  In its response to the motion for reduction filed by Libby on De La Garza's behalf, however, the government changed its position. Taking into consideration information concerning De La Garza's alleged conduct while in custody, the government argued that the Court should not reduce his sentence. (See D.E. 43.)

955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge may not do service for an appeal."  United States v. Frady, 456 U.S. 152, 165 (1982).

**B.    De La Garza's Waiver of § 2255 Rights**

As discussed infra at Section IV.D., De La Garza's second claim is not properly before the Court because it falls within the scope of his § 2255 waiver.  See United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights).  That is, his claim of ineffective assistance of counsel at sentencing is not one that directly affects the validity of his plea or waiver; it thus falls within the scope of his waiver and is barred.  See infra Section IV.D.

As to his first claim that his counsel misled him as to the likely consequences of his guilty plea, however, De La Garza raises a challenge to the validity of his plea and consequently his waiver.  See White, 307 F.3d at 343-44.  Thus, the Court turns to the merits of this claim.

**C.    Alleged Ineffective Assistance of Counsel As to Plea**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984).  United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001).  To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial.  Id.  This means that a movant must show that counsel's performance was outside the broad range of what is considered

13

reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence.  United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other.  Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."). When viewing the record as a whole, it is clear that De La Garza cannot show prejudice and thus is not entitled to relief as to his claim.

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, De La Garza must show that, absent his counsel's deficiencies, he would have proceeded to trial.  See also United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  This is a showing that cannot be met here.  The rearraignment transcript clearly establishes that De La Garza's decision to plead guilty was his own and that it was entirely voluntary.

At his rearraignment, De La Garza testified in open court that he had received a copy of his indictment, discussed it with his attorney, and that he understood it. (R. Tr. at 4-5 .)

14

He testified that he had enough time to discuss his case with his attorney, that he was satisfied with his attorney's services, that his attorney had been a good lawyer for him, that his attorney had answered all of his questions and that his attorney was following De La Garza's instructions. (R. Tr. at 5.)  The Court informed De La Garza of the various trial rights available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights.  (R. Tr. at 5-7.)  The Court informed De La Garza of the charge against him and De La Garza testified that he understood the charge.  (R. Tr. at 7-8.)

Consistent with Rule 11, Fed. R. Crim P., the Court explained to De La Garza the maximum punishment that he might receive.  Specifically, the Court informed him that he could be sentenced to a maximum of forty years in prison and a maximum fine of $2 million. The Court also informed him that there was a mandatory $100 special assessment, and a supervised release term of not less than four years, and that it could last for the rest of his life. (R. Tr. at 8.)  De La Garza testified that he understood.  (R. Tr. at 8.)  De La Garza further testified that no one had threatened him or forced him to plead guilty, that no one had promised him leniency, that it was his decision to plead guilty, and that he was pleading guilty because he was guilty.  (R. Tr. at 9-10.)

De La Garza's sworn statements in open court are entitled to a strong presumption of truthfulness.  United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).   Indeed, the Fifth Circuit affords "great

weight to the defendant's statements at the plea colloquy." <u>United States v. Cothran</u>, 302 F.3d 279, 283-84 (5th Cir. 2002). De La Garza's sworn statements at the rearraignment show that he fully understood the rights he was giving up under the plea agreement, that he understood he faced a possible sentence of 40 years, and that no one was forcing him to plead guilty. <u>See</u> <u>Wilkes</u>, 20 F.3d at 653.

Furthermore, at sentencing, after having seen the PSR and his guideline range, De La Garza told the Court that it was "correctly written." (S. Tr. at 3.) This fact further undermines his claim that his attorney gave him incorrect advice concerning his likely sentence.

In short, De La Garza cannot overcome his testimony at the rearraignment – which clearly established a knowing and voluntary plea – to now show that he would have insisted on going to trial but for counsel's performance.

Moreover, De La Garza's belated claim that, had he known he faced the possibility of a 151-month sentence, he would have proceeded to trial instead of pleading guilty defies logic. That is, had he gone to trial, it is highly likely that the jury would have found him guilty, based on the evidence in this case. When De La Garza was seen engaging in activity consistent with a drug transaction and police officers approached, he began to walk away. Despite being told several times to stop, De La Garza did not comply. When he was apprehended, 8.84 grams of crack cocaine was found on his person. Thus, the evidence

against him made it very likely he would have been found guilty of the offense. Indeed, even now he does not claim that he is innocent of the offense.

Moreover, had he been convicted after a trial, his applicable sentencing guideline range would have been higher. This is true because the aspects of his sentence that he challenges would not have been changed. That is, the Court would still have included the additional 42 grams of crack cocaine seized from De La Garza on two other occasions as relevant conduct. But, had he gone to trial, De La Garza would not have received a three-level reduction for acceptance of responsibility. At the very least, then, his resulting offense level would have been three levels higher, and would likely have resulted in a higher sentence. Thus, had he gone to trial his sentence likely would have been higher. For all of these reasons, it simply does not make sense that he would have made the choice to go to trial, instead of choosing – quite logically – to plead guilty.

In short, De La Garza cannot prove the prejudice prong of the <u>Strickland</u> inquiry, and it is unnecessary to determine whether his counsel's performance was deficient. His claim of ineffective assistance in the plea process fails.

Because the Court concludes that De La Garza's sole challenge to the validity of his plea agreement fails, the Court finds that his plea agreement and his waiver of § 2255 rights contained therein are valid and enforceable. Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claim.

**D.      Waiver of § 2255 Rights**

As noted, it is clear from the rearraignment that De La Garza understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable. (R. Tr. at 11-12.) See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up).  Again, De La Garza's statements under oath are entitled to a strong presumption of truthfulness. Wilkes, 20 F.3d at 653; Cothran, 302 F.3d at 283-84.  Those statements support the Court's conclusion that his waiver was knowing and voluntary.  His second claim, asserting that his counsel was constitutionally ineffective at sentencing, clearly falls within the scope of that waiver.

Moreover, even if the claim were properly before the Court, it would not entitle De La Garza to relief. In order to establish prejudice as to his claim that counsel was constitutionally ineffective at sentencing, De La Garza must show a reasonable probability that, but for counsel's alleged errors, he would have received a lesser sentence.  See United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000);   This requires the defendant to show that a reasonable probability that he would have received a lesser sentence.  United States v. Grammas, 376 F.3d 433, 438-39 (5th Cir. 2004). This is a showing that De La Garza has not made.

As an initial matter, and despite De La Garza's protestations to the contrary, there was a laboratory report from the Texas Department of Public Safety which confirmed that

the substance found under the refrigerator was in fact cocaine base.  This is consistent with what the AUSA told the Court at the initial call for rearraignment, as well.  (See C. R. Tr. at 12-15.)  Indeed, it was never an issue as to whether or not the substance contained cocaine base; instead, the DPS lab had been initially refusing to provide information as to what amount of the total net weight was crack and what amount was some other non-illegal substance.  (See id.)In any event, the lab report provided to the United States Probation Office confirms the weight and that the substance contained cocaine base.  Thus, De La Garza's contention that there was no evidence showing the drugs contained cocaine base is without merit.

Additionally, the amount of cocaine base that determined De La Garza's offense level would not have changed based on the percentage of the substance that was cocaine base.  Put differently, the offense level was properly calculated based on the net weight of the substance containing the cocaine base, not the weight of the cocaine base within the substance.  See U.S.S.G. § 2D1.1(c), drug quantity table, note (A) ("Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the *entire weight* of any mixture or substance containing a detectable amount of the controlled substance.") (emphasis added).   Thus, even if the DPS report had contained a breakdown of the percentage of cocaine base and the percentage of other legal substances, it would not have changed his offense level.

For all of these reasons, there was no valid objection to the inclusion of the additional amounts of cocaine base; they were rightly included as relevant conduct. Accordingly, even if De La Garza's counsel had objected, there is not a reasonable probability he would have received a lesser sentence. His claim therefore fails. See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

In sum, while De La Garza's ineffective assistance claim as to his plea is denied on the merits, his allegation of ineffective assistance of counsel is both barred by his waiver and fails on its merits. For these reasons, De La Garza's § 2255 motion is DENIED in its entirety.

## E.    Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although De La Garza has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right

20

on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that De La Garza is not entitled to a COA as to either of his claims.  That is, reasonable jurists could not debate the Court's

resolution of his ineffective assistance claim as to the plea.  Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of his ineffective assistance of counsel claim at sentencing, or that the claim fails on its merits.

## V.  CONCLUSION

For the above-stated reasons, the third claim in De La Garza's § 2255 motion has already been addressed by the Court's denial of his separately-filed motion for retroactive application of sentencing guidelines pursuant to 18 U.S.C. § 3582(c)(2). (D.E. 41, 44.)  The remainder of his claims, which the Court construes as the entirety of De La Garza's motion under 28 U.S.C. § 2255 (D.E. 38) is DISMISSED WITH PREJUDICE.  The Court also DENIES him a Certificate of Appealability.

It is so ORDERED this 15th day of August, 2008.

_Hayden Head_
HAYDEN HEAD
CHIEF JUDGE